**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

**CRAIG T. GOLDBLATT**
**JUDGE**

**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

February 9, 2026

**VIA CM/ECF**

Re: *In re Cyber Litig. Inc.*, 20-12702; *Drivetrain LLC v. Dawson*, Adv. Proc. No. 24-50177

Dear Counsel:

This ruling is intended primarily for the benefit of the parties, so the Court will assume familiarity with the basic factual and procedural background. Anthony Dawson was the Chief Revenue Officer of the debtor. He was also an early investor in the debtor and received approximately $1.465 million in a June 2020 tender offer in which he sold certain of his shares back to the company.[1] The trustee of the litigation trust filed this adversary proceeding against him, asserting claims for fraudulent conveyance as well as common law claims for breach of fiduciary duty and unjust enrichment.

In October 2023, this Court issued an opinion in a fraudulent conveyance case that the litigation trust had brought against other participants in the debtor's tender

[1] D.I. 36-3 at 167.

offer.[2] That opinion held that, for purposes of the approval of the tender offer, the intent of the company's founder was properly imputed to the company, notwithstanding the fact that the majority of the board lacked any fraudulent intent. The reason was that undisputed record showed that the founder had effectively tricked the rest of the board into believing that the company was thriving, when in fact it was a largely fraudulent enterprise.

For the reasons set forth below, the Court concludes that the trustee is entitled to summary judgment against Dawson on the fraudulent conveyance claim for essentially the same reasons the Court explained in the *DDE* Opinion. With respect to the claim for breach of fiduciary duty, the Court concludes that the trust is entitled to partial summary judgment on the question whether Dawson owed fiduciary duties to the company. But material disputes of fact preclude the entry of summary judgment on whether Dawson breached those fiduciary duties.

**Factual and Procedural Background**

As the *DDE* Opinion explains, Adam Rogas was the company's founder and CEO. He was the only person with visibility into the debtor's revenue bank account and the data and metrics underlying its revenue and customer counts.[3] As Dawson explained in his deposition, each month Rogas provided Dawson with spreadsheets

---

[2] *In re Cyber Litig., Inc.,* No. 20-12702, 2023 WL 6938144 (Bankr. D. Del. Oct. 19, 2023). That opinion, issued in the adversary proceeding asserted against DDE Partners, LLC and other defendants, will be referred to as the "*DDE* Opinion."

[3] *Id.* at *3.

and pivot tables filled with forged sales and customers.[4] Dawson used the information contained within these files to calculate projected future growth and annual recurring revenue for the debtor.[5]

As will be further described below, there is evidence in the record suggesting that Dawson did take steps to reconcile apparent discrepancies in the business records provided to him by Rogas, though it does not appear that he ever raised those concerns with the Board. Dawson's receipt of approximately $1.465 million in the proceeds of the tender offer is not disputed.

Upon reviewing the summary judgment briefs, the Court's reaction was that the issue presented by the fraudulent conveyance issue was materially the same as the one the Court decided in *DDE*. Dawson was not a party to that dispute and therefore is not bound by the Court's ruling. That said, the body of evidence regarding the issuance of the tender offer was the same, and the Court did not see in Dawson's briefing either evidence or arguments that the Court had not already considered in the *DDE* matter. With respect to the claims of fiduciary duty (and other common law claims), however, the Court (from its review of the parties' briefs) formed a preliminary view that there appeared to be genuine issues of material fact that would preclude the entry of summary judgment.

---

[4] D.I. 36-3 at 87.

[5] *Id.* at 87.

The Court docketed a short letter to the parties setting forth these initial reactions in the hopes that sharing these observations might inform how the parties elected to proceed on the motions.[6] Dawson responded with a letter indicating that he did not intend to submit further briefing in response to the Court's observations but did request argument on the motion.[7] The Court accordingly scheduled argument for February 3, 2026.[8] The plan trustee submitted a letter brief in advance of that argument agreeing with the Court's preliminary view that summary judgment should be granted in its favor on the fraudulent conveyance claim and arguing that the record also supported the entry of summary judgment on the common law claims.[9]

**Analysis**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] A court must draw all reasonable inferences in the light most favorable to the non-moving party but shall not make credibility determinations nor weigh the evidence.[11]

---

[6] D.I. 41.

[7] D.I. 45.

[8] D.I. 46.

[9] D.I. 47.

[10] Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056).

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

The role of the court is to assess the record evidence and determine whether it would permit a reasonable finder of fact to rule in favor of the non-moving party.[12]

## I. There is no genuine dispute of material fact regarding Dawson's liability for actual fraudulent transfers.

This Court's *DDE* Opinion concludes that when an element of a federal claim against a corporate entity depends on the imputation of the intent of a person to that entity, federal law borrows from the state law under which that entity is organized to determine whose intent should be imputed.[13] The debtor was organized under the laws of Delaware, so Delaware law provides the rule of decision with respect to imputation. And there, the import of the Delaware Supreme Court decision in *Boardwalk Pipeline Partners* (and the cases on which that court relied) is that for decisions that require board approval, it is the intent of the majority of the board that should be imputed to the corporation.[14]

The part of the *DDE* Opinion that was complicated was dealing with the fact that on the undisputed factual record in this case, a majority of individual members of the board lacked any intent to hinder, delay, or defraud creditors. They approved the transaction because they believed, based on information provided to them by Rogas, that the transaction was in the best interests of the company. But it was also undisputed that Rogas had deceived them. Relying on the Court of Chancery's

---

[12] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

[13] *DDE* Opinion at *7-8.

[14] *Id.* at *9 (citing *Boardwalk Pipeline Partners, LP v. Bandera Master Fund LP*, 288 A.3d 1083 (Del. 2022)).

decision in *Boomerang Tube*, the district court's opinion in *Tribune*, and the bankruptcy court's decision in *Lyondell*, this Court concluded that where one corporate actor effectively "controls" another – whether through deception or otherwise – it is the intent of the puppeteer, not the marionette, that is properly imputed to the corporation.[15]

Dawson's summary judgment opposition, while mentioning the Court's opinion in passing for a noncontroversial point, mostly just repeated the arguments that the Court had considered and rejected in *DDE*. In substance, his argument was that so long as the majority of the board acted without an intent to hinder, delay, or defraud creditors, the transfer they approved cannot be a fraudulent conveyance. On this reasoning, it makes no difference whether they had been tricked or otherwise controlled by someone who did have such an intent.

At argument on the summary judgment motion, Dawson's counsel stood by his argument that this Court's decision in *DDE* was wrongly decided. In support of that proposition, he argued that the Second Circuit's decision in *Tribune* (which affirmed the district court opinion on which this Court relied) offered reasoning that was inconsistent with this Court's conclusion. For the reasons set forth below, this Court is not persuaded by this argument and adheres to its prior decision in *DDE*.

---

[15] *Id.* at *11-13 (citing *In re Lyondell Chem. Co.*, 541 B.R. 172 (Bankr. S.D.N.Y 2015); *In re Tribune Co. Fraudulent Conveyance Litig.*, No. 11-md-2296, 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017); *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378, 2023 WL 56883982 (Del. Ch. Sept. 5, 2023)).

Both the district court and the Second Circuit in *Tribune* found that if one actor controls another, it is the act of the controlling actor that gets imputed. This Court followed that same reasoning. In fleshing out what it means for one party to control another, this Court suggested that when the first party's deception is causally tied to second party's action, the first party can be said to have controlled the second party with respect to that action.[16]

In *Tribune,* it appears that the trustee argued that the court should apply a test of "proximate causation" that was viewed (in ways that are not at all clear) as asking a different question from whether one party "controlled" another. The Second Circuit rejected that argument, finding that the district court correctly applied a test of "control."[17] Whatever difference the Second Circuit may have thought existed between these standards, for purposes of this Court's analysis they ask the same substantive question. The issue is whether one party controlled another. How does one tell the difference between one party "controlling" another and a circumstance in which the second party has made an independent decision, simply influenced or affected by the first party's conduct? However the Second Circuit may think about that question, in this Court's view the touchstone is to ask whether the first party so overcame the independent judgment of the second that the first party's actions were

---

[16] *DDE* Opinion at *10 ("The question thus becomes whether the 'cause' of the debtor's decision was, on the one hand, Rogas' fraud, or, on the other, the independent decision made by the innocent board members.")

[17] *In re Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th 147, 161 (2d Cir. 2021).

the proximate cause of the decision. Despite the Second Circuit's rejection of the "proximate cause" standard, this Court understands its emphasis on "control" to be asking precisely the same substantive question that this Court applied in *DDE*.

Dawson is of course well within his rights to disagree with this Court's decision in *DDE* and to argue on appeal from this Court's final judgment in this case that it is wrongly decided. This Court, however, is not persuaded either that there is a material difference between this case and *DDE* or that this Court erred in the analysis it set forth there. The Court will accordingly grant partial summary judgment in favor of the plaintiff on the fraudulent conveyance claim.

## II. There is no genuine dispute of material fact that Dawson was an officer who owed fiduciary duties to the company.

Under Delaware law, corporate directors and officers owe fiduciary duties to the corporation they serve.[18] The question thus becomes whether Dawson was, by virtue of his position in the company, an "officer" who serves as a fiduciary. As Dawson emphasizes, a title is not dispositive, and the analysis is more accurately focused on responsibilities. Generally, an "officer" is one to whom the primary functions of management are delegated.[19]

---

[18] *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939); *Anadarko Petrol. Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988).

[19] *See, e.g.*, A. Sparks & L. Hamermesh, *Common Law Duties of Non-Director Corporate Officers*, 48 Bus. Law. 215, 216 (1992) ("For purposes of determining whether fiduciary duties attach, the scope of the term 'officer' seems to be a function of responsibilities. A title is not dispositive."); *Gantler v. Stephens*, 965 A.2d 695, 709 (Del. 2009) (emphasizing the officer's functional role in assessing their fiduciary duties).

Dawson held the position of Chief Revenue Officer.[20] His contract defined his responsibilities as "consistent with the position of Chief Revenue Officer."[21] Dawson reported directly to Rogas.[22] Dawson had many direct reports and hired numerous individuals.[23] Dawson made significant management and administrative decisions regarding the areas of the business he oversaw, including how to structure the business segments at a high level and where within the organization to place certain individuals.[24] He described his job as to "build the organization to succeed over time, grow it and make it work."[25] Further, consistent with his officer position, Dawson's employment agreement contained indemnification under a directors' and officers' liability policy.[26] Dawson was also held out to the public as an "Executive Officer" on filings the debtor made with the SEC.[27]

While Dawson attempts to downplay the importance of his responsibilities, stating he was "a glorified [executive vice president of] sales," Dawson points to no evidence suggesting that there is a genuine issue of material fact about whether he

[20] D.I. 34-1 at 54-55.

[21] D.I. 34-3 § 3.1.

[22] D.I. 34-1 at 85; D.I. 34-3 § 2.1.

[23] D.I. 36-3 at 85, 156 ("I just hired a lot of people.").

[24] *Id.* at 81-84 (describing Dawson's job responsibilities and key decisions he made, including "decid[ing] to keep [the channel sales side] separate from alliances" and "[bringing George Bailey-Kirby] into [his] organization").

[25] *Id.* at 84.

[26] D.I. 34-3 § 8.

[27] D.I. 34-4.

had the kinds of substantive responsibilities that would qualify him as an officer.[28] On the record before the Court, there is no genuine issue of material fact that Dawson was an "officer" who owed fiduciary duties. The Court will accordingly grant partial summary judgment in the plaintiff's favor on that issue.

### III. There is a genuine dispute of material fact regarding whether Dawson's breach of his fiduciary duties.

Officers of Delaware corporations owe the same fiduciary duties as directors: the duty of care and the duty of loyalty.[29] The duty of care requires that fiduciaries "act on an informed basis before making a business decision and … act prudently in carrying out their responsibilities."[30] Courts analyze whether the process leading to the relevant decision reflects "good faith consideration."[31] To show a breach of the duty of care, a plaintiff must prove that the fiduciary was "grossly negligent."[32] Gross negligence requires "reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason."[33] Generally, an officer must "use that amount of care which [an] ordinarily

---

[28] D.I. 34-1 at 135.

[29] *Gantler v. Stephens*, 965 A.2d 695, 708-709 n.36 (Del. 2009); *see also In re Greater Southeast Cmty. Hosp. Corp.*, 353 B.R. 324, 339 (Bankr. D.D.C. 2006) ("With respect to the obligation of officers to their own corporation and its stockholders, there is nothing in any Delaware case which suggests that the fiduciary duty owed is different in the slightest from that owed by directors.")

[30] *In re Nobilis Health Corp.*, 661 B.R. 891, 903 (Bankr. D. Del. 2024) (citation omitted).

[31] *Id.* (citation omitted).

[32] *Id.* (citation omitted).

[33] *Id.* (citation omitted).

careful and prudent [person] would use in similar circumstances" and make business decisions by "consider[ing] all material information reasonably available."[34] "[D]uty of care violations are rarely found."[35]

The duty of loyalty requires that the fiduciaries "place the interests of the corporation above their own interests."[36] To show a breach of the duty of loyalty, a plaintiff must prove either that (1) "the defendants were conflicted and pursued their own interests above those of the company" or (2) "the defendant failed to pursue the best interests of the company in good faith."[37] The requirement to act in good faith is a "subsidiary element" of the duty of loyalty.[38]

The trustee argues that Dawson gained personal knowledge of irregularities and discrepancies in the debtor's financial and customer data. The trustee points to Dawson's knowledge of the issues with the financial data and discrepancies in spreadsheets provided by Rogas, to his awareness that the debtor could not identify customers captured in the spreadsheet, and to the frustration among his team members regarding the problems with the data. The trustee alleges that Dawson's failure to report these issues to the board amounted to gross negligence and thus a breach of his fiduciary duties.

---

[34] *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005).

[35] *Id.* at 750.

[36] *Nobilis*, 661 B.R. at 903 (citation omitted).

[37] *Id.* (citation omitted).

[38] *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

In his defense, Dawson points to numerous examples of his acting in good faith trying to resolve the issues, as a reasonable person would. Dawson testified at his deposition that he repeatedly attempted to get to the bottom of the data discrepancy issues and sort out the customer matching problem.[39] To that end, Dawson testified that he raised concerns about the issues every month.[40] Dawson said that he was led to believe that the data issues were the result of a "data problem."[41] As Dawson describes it, Rogas told Dawson that, over three years, three different technical people were trying to solve the problem.[42] Dawson asserts that he followed up with Rogas about the issue month after month.[43] Getting nowhere with Rogas, Dawson says that he reached out to his peers, including the individuals who led coding at the debtor.[44] When this also turned up no answers, Dawson testified that he hired "Anthony [Renzulli] to fix [the] data problem" and in fact specifically "created [Mr. Renzulli's] position so [Renzulli] could find the data that the [technology team] couldn't."[45]

The Court concludes that this record evidence is sufficient to create a genuine issue of material fact. Otherwise put, a reasonable finder of fact could credit Dawson's testimony and thus conclude that Dawson had not acted with gross

---

[39] D.I. 36-3 at 95-97.

[40] *Id.* at 95-96.

[41] *Id.* at 148-149.

[42] *Id.* at 149.

[43] *Id.* at 200.

[44] D.I. 36-3 at 109-110.

[45] *Id.* at 99-100.

*In re Cyber Litig. Inc.*, 20-12702; *Drivetrain LLC v. Dawson*, Adv. Proc. No. 24-50177
February 9, 2026
Page 13 of 13

negligence in the discharge of his fiduciary duties. For that reason, the motion for summary judgment will be denied with respect to the breach of fiduciary duty and other common law claims.

**Conclusion**

For the foregoing reasons, the motion will be granted in part and denied in part. The parties are directed to settle an appropriate order.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge